UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DORU GABRIEL TRIFU, | No. 1:17-cv-00920-DAD-JLT <br><br> <u>ORDER EXTENDING JULY 13, 2017 ORDER REGARDING EMERGENCY INVOLUNTARY MEDICATION, HYDRATION, AND NUTRITION</u> <br><br> (Doc. Nos. 2 & 3) |

Respondent Doru Gabriel Trifu is a federal prisoner in the custody of the Federal Bureau of Prisons ("BOP"). Mr. Trifu has been incarcerated at the Taft Correctional Institution ("Taft CI"), in Taft, California since February of 2014. Petitioner Management & Training Corporation (MTC) ("MTC") is the current operator of Taft CI.

On June 23, 2017, after observing abnormal behavior by Mr. Trifu, staff at Taft CI placed Mr. Trifu on suicide watch to allow for continued monitoring. While on suicide watch, Mr. Trifu continued to engage in odd behavior and exhibited signs of paranoia. On June 27, 2017, prison officials transported Mr. Trifu to the emergency room at Mercy Hospital, in Bakersfield, California, for further evaluation after receiving reports that Mr. Trifu had not eaten or taken fluids for twenty-four hours. At Mercy Hospital, Mr. Trifu was given intravenous ("IV") therapy. However, on June 28, 2017, he ripped out his IV and refused to have it restarted. He again

stopped eating on June 30, 2017, and stopped drinking water on July 2, 2017.[1]

On July 6, 2017, while Mr. Trifu was still at Mercy Hospital, BOP approved a request for an emergency transfer of Mr. Trifu to the Federal Medical Center in Devens, Massachusetts ("FMC Devens").  However, BOP will not conduct the transfer until Mr. Trifu is medically stable.  Accordingly, on July 11, 2017, MTC petitioned this court for an emergency order to allow medical staff at Mercy Hospital to provide Mr. Trifu with involuntary medication, hydration, and nutrition, for a period of seven days.  (Doc. No. 2.)  On July 13, 2017, this court granted MTC's request in part.  Specifically, it ordered respondent Mr. Trifu to submit to medical treatment deemed necessary by medical officials working on behalf of MTC, including those at Mercy Hospital, to sustain his health or life, including but not limited to the administration of necessary medication, hydration, and nutrition, for a period of not more than twenty-four hours.  (Doc. No. 6 at 2.)

Following the court's July 13, 2017 order, medical staff transferred Mr. Trifu to Kern Medical Center ("KMC"), in Bakersfield California on July 14, 2017.  Thereafter, KMC staff started Mr. Trifu on IV-based fluids and medications and began use of a feeding tube.  KMC medical staff have determined that Mr. Trifu suffers from severe dehydration, resulting in acute renal failure and uremic encephalopathy.  Medical staff at Taft CI and at KMC have independently determined that at this time, Mr. Trifu is not competent to make decisions on his own behalf regarding his health care.  Moreover, medical staff at Taft CI have concluded that Mr. Trifu continues to pose a danger to himself.

In light of these circumstances, petitioner MTC requests that this court extend its July 13, 2017 order authorizing the administration of medication, hydration, and nutrition deemed necessary by medical staff for a period of two additional weeks in order to treat Mr. Trifu's current condition and stabilize him for transport to FMC Devens.

Prisoners "possess[] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."

---

[1] For the first time since July 2, 2017, Mr. Trifu accepted at least two servings of fluids on the morning of July 13, 2017.  But he continued to refuse food or any type of medication.

*Washington v. Harper*, 494 U.S. 210, 221–22 (1990). "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Id.* at 229. Nonetheless, the Due Process Clause allows the government to involuntarily administer antipsychotic drugs "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. The process that is procedurally due prior to the involuntary administration of such medication must be consistent with the decision in *Mathews v. Eldridge*, 424 U.S. 319, 335, in which the Supreme Court held that the reviewing court must consider "[1] the private interests at stake in a governmental decision, [2] the governmental interests involved, and [3] the value of procedural requirements in determining what process is due under the Fourteenth Amendment." *Harper*, 494 U.S. at 229 (quoting *Hewitt v. Helms*, 459 U.S. 460, 473 (1983)). In considering what process is due prior to the involuntary administration of antipsychotic drugs to render an inmate non-dangerous, a court should consider the type of drugs to be administered, the anticipated effects of administering such drugs, prison policies or regulations, and evidence from doctors, psychiatrists, and psychologists involved in the decision-making process. *See id.* at 229, 231–35; *United States v. Loughner*, 672 F.3d 731, 752–54, 756 (9th Cir. 2012).[2] Moreover, the procedural requirements set forth in *Harper* may not apply in emergency situations. *See Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998) (suggesting that where a prisoner poses "an imminent and serious danger to himself or others," the minimal procedural requirements of *Harper* need not be met).

A prisoner generally does not possess a constitutional right to be free from forced-feeding; rather, "Bureau of Prison regulations authorize medical officers to force-feed an inmate if they determine that the inmate's life or permanent health is in danger." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (citing 28 C.F.R. §§ 549.60–549.66). In accordance with those federal regulations, BOP may transfer a prisoner, for refusing to eat, to a hospital when medical staff

---

[2] In this context, a prisoner is not entitled to representation by counsel, *see Harper*, 494 U.S. at 236; *Loughner*, 672 F.3d at 756–57, but may have a staff representative or "an independent lay adviser who understands the psychiatric issues involved." *Harper*, 494 U.S. at 236. Where a hearing held pursuant to the decision in *Harper* "is largely inquisitorial in nature," the staff representative or representative "is there to facilitate the presenting of evidence or witnesses for the inmate." *Loughner*, 672 F.3d at 763.

3

1 consider it medically mandatory to do so.  *See* 28 C.F.R. § 549.63.  "When, after reasonable
2 efforts, or in an emergency preventing such efforts, a medical necessity for immediate treatment
3 of a life or health threatening situation exists, the physician may order that treatment be
4 administered without the consent of the inmate." 28 C.F.R. § 549.65(c).

5     Here, the court is convinced that in his current state, Mr. Trifu is mentally incompetent, is
6 unable to make decisions regarding his medical treatment,[3] and poses an imminent and significant
7 danger to his own life.   Furthermore, the court is satisfied based on petitioner's representations at
8 this time, that medical staff have made reasonable efforts to convince Mr. Trifu to voluntarily
9 accept treatment and explain the risks of not receiving such treatment.  Accordingly, the
10 continued involuntary administration of medication, hydration, and nutrition to Mr. Trifu is
11 appropriate on an emergency basis, in order to sustain his health or life and to stabilize his
12 condition for transport to FMC Devens.  In light of the evidence before this court, and noting that
13 neither Mr. Trifu nor anyone on his behalf has objected, the court will extend the order for
14 emergency relief as requested.

15     For the reasons set forth above:

16     1. The court's July 13, 2017 order granting petitioner's petition for emergency relief
17        (Doc. No. 6) is extended;

18     2. For a period of not more than **fourteen (14) days** from the time this order is served,
19        respondent Mr. Doru Gabriel Trifu is ordered to submit to medical treatment deemed
20        necessary by medical officials working on behalf of MTC, including those at Kern
21        Medical Center, to sustain his health or life, including but not limited to the
22        administration of medically necessary medication, hydration, and nutrition;

23     3. Petitioner MTC is directed to file a status report with this court not later than **12:00
24        p.m., on July 27, 2017**, as to the nature and extent it has been determined that there is

---

[3] On July 14, 2017, this court contacted representatives of the Office of the Federal Public Defender for the Eastern District of California, which briefly represented Mr. Trifu in connection with his underlying criminal proceedings, *see United States v. Trifu*, No. 2:12-mj-00309-DAD (E.D. Cal. filed Nov. 16, 2012), and notified them of this pending petition in the event they are able to locate and notify a family member who might otherwise be able to act on Mr. Trifu's behalf with regard to his medical condition.

a need for continued involuntarily administered medication, hydration, and nutrition, as well as the specific medication, hydration, and nutrition that medical staff has determined to be necessary in order to sustain Mr. Trifu's life and health; and

4. The court will issue an order, if necessary, with respect to further emergency relief based upon a satisfactory showing made by petitioner.

IT IS SO ORDERED.

Dated:   **July 14, 2017**                                    *Dale A. Drozd*
                                                              UNITED STATES DISTRICT JUDGE